IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NICHOLAS BIRMINGHAM,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CASE NO. 2:23-CV-737-KFP
                                   )
HYUNDAI MOTOR MANUFACTURING        )
OF ALABAMA, LLC,                   )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case rooted in Plaintiff Nicholas Birmingham's termination from employment with Defendant Hyundai Motor Manufacturing, Alabama, LLC. Birmingham alleges disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), and retaliation in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2).

The parties consented to a United States Magistrate Judge conducting all proceedings in this case through final judgment. Docs. 14–15. Before the Court is Hyundai's Motion for Summary Judgment. Doc. 23. Upon consideration of the motion, along with Birmingham's Response (Doc. 30), Defendant's Reply (Doc. 34), and the parties' evidentiary submissions (Docs. 24, 29), the Court finds that Defendant's Motion for Summary Judgment is due to be granted.

I.    **SUMMARY JUDGMENT STANDARD OF REVIEW**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for "summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The relevant rules of substantive law dictate the materiality of a disputed fact." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). In determining whether a genuine dispute of fact for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the

evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a).

## II.    JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over this case arising from claims under the ADA and FMLA. Personal jurisdiction and venue are not contested, and the Court concludes that venue properly lies in the Middle District of Alabama. 28 U.S.C. § 1391.

## III.    BACKGROUND

### A.    Hyundai Employment Policies

Hyundai has an attendance policy that requires a "minimum acceptable standard of attendance" at 99%. Doc. 24-6 at 20; *see also* Doc. 24-14 at 18; Doc. 24-15 at 21. The policy further notes that "[a]ny scheduled workday missed is considered an absence" unless it is "due to holidays, approved vacation time, personal time, catastrophic events, jury duty, military leave, bereavement leave, short-term disability, work-related injury or illness, personal leave of absence and FMLA leave." Doc. 24-6 at 20. When an employee's percentage falls below 99.3% for absences not approved during a "rolling twelve-month period, corrective action will be considered" for the employee. *Id.* at 21. For employees in the corrective action process who have "attendance [which] continues to be unacceptable[,] it could result in further corrective action up to and including termination." *Id.* The steps that "must be followed" in the corrective action process are: (1) Informal Discussion, (2) Formal Discussion, (3) Commitment Discussion, and (4) Termination. *Id.*

In addition to the standard attendance policy outlined above, Hyundai also has an Excessive Absenteeism policy. The Excessive Absenteeism policy defines "excessive" as five unexcused absences in a period of two weeks. Doc. 24-15 at 18. "If a Team Member has five unexcused absences during a two-week period, they would be issued a serious misconduct for excessive absenteeism regardless of what stage of corrective action the Team Member may already have in their personnel file." *Id.* Team Members who engage in egregious absenteeism effectively accelerate the corrective action process. *Id.* "A Team Member who is not already on an active 'serious misconduct' who has a series of absences that could qualify as 'serious misconduct' is given an 'off-base' warning letter" and given the opportunity "to demonstrate that such absences are in fact covered by approved leave and therefore not subject to being counted." Doc. 24-14 at 3.

The Serious Misconduct Policy notes that "serious and/or excessive violations of [Hyundai's] attendance policy" constitute serious misconduct. Doc. 24-6 at 17. In cases of Serious Misconduct, the Team Member: (1) will receive a letter of Conditional Employment, (2) will participate in a formal meeting, and (3) will be "required to write a commitment letter by the end of his/her shift the following business day." *Id.*

The Termination of Employment Policy emphasizes that "a Team Member [who] refuses to respond to the steps in the 'Corrective Action Program'" or "[a] Team Member[] [whose] actions are such that [Hyundai] feels his/her employment cannot be continued, . . . will be terminated." *Id.* at 19.

4

B.    **Factual Background**

Birmingham was employed by Hyundai and served as a member of the engine production division at the plant in Montgomery, Alabama. Birmingham suffers from respiratory conditions, including asthma, so he sought, and was approved for, FMLA leave during the applicable rolling FMLA year in 2022. However, in 2022, Birmingham also accumulated absences that were not covered by FMLA, including some absences for which FMLA was denied.

By December 2022, Birmingham had accumulated multiple absences not covered by any absence policy. Doc. 24-14 at 21. On December 9, 2022, Hyundai sent Birmingham an "off base" warning letter, (*Id.* at 3), requiring him to provide "documentation showing that [his] work absences . . . for September 30, 2022, November 2, 2022 through November 4, 2022, November 12, 2022, November 14, 2022 through November 15, 2022, November 20, 2022 through November 22, 2022, November 29, 2022 through November 30, 2022," and from "December 1, 2022 through December 2, 2022, and December 5, 2022 [were] covered by some form of [] approved leave." *Id.* at 21. This letter warned that "[Birmingham's] failure to provide the required documentation by December 23, 2022 may result in [Hyundai] terminating [his] employment." *Id.*

Hyundai's Employment Review Committee (ERC) scheduled a meeting for January 20, 2023, to review Birmingham's absenteeism. In preparation for the meeting, Ta'Lon Brown, Hyundai's Assistant Manager of Investigations, prepared an Investigation Summary (January Summary) for the ERC. Doc. 24-14 at 3. In the January Summary, Brown detailed that Birmingham produced documentation supporting that short term

disability was approved for some of the dates in question; he was approved for November 20, 22, 29, 30, and December 1, 2, and 5. *Id.* at 3–4. However, even though Birmingham submitted a claim for leave under FMLA for part of November 2, and for the days of November 3, 4, 12, 14, and 15, Birmingham failed to provide documentation of an approved form of leave for these dates. *Id.* Ultimately, these unapproved and uncovered November dates comprised five days absent within a 14-day period, which constituted "excessive" absences under Hyundai policy. *Id.* at 4, 18. The January Summary further detailed that "Birmingham has a current attendance percentage that is below the required [] attendance percentage of 99%." *Id.* at 10.

The January Summary reiterated Hyundai's Excessive Absenteeism policy (Doc. 24-14 at 18) that "[i]f a Team Member has 5 unexcused absences (unapproved medical leaves) during a two-week period, they would be issued a serious misconduct for excessive absenteeism regardless of what stage of corrective action the Team Member may already have in their personnel file," and that "[o]nce a Team Member has received a serious misconduct for attendance, they can be reviewed for termination if they have one (1) more unexcused absence . . . and their attendance percentage has not improved above 99% during a rolling 12-month period." Doc. 24-14 at 12–13.

At the ERC meeting on January 20, 2023, the January Summary was presented and, "based on the November 2, 3, 4, 12, 14, and 15, absences" (Doc. 24-15 at 4) detailed in the January Summary, Reginald Williams, the Senior Manager of Human Resources, decided to place Birmingham on Serious Misconduct (Doc. 24-14 at 4). On February 1, 2023, Birmingham's Manager Jermaine Mitchell, Brown, and Team Relations Representative

Christopher Arnold met with Birmingham to notify him of his placement on Serious Misconduct. Doc. 25 at 6; Doc. 24-14 at 4; Doc. 24-16 at 99:1–11; Doc. 24-17 at 92:2–5; Doc. 24-19 at 2. At the meeting, Birmingham was issued a "Letter of Conditional Employment" which stated that the denied FMLA leave on September 30, November 2, 3, 4, 12, 14, 15, 20, 21, 22, 29, 30, and December 1, 2, and 5 all "affected [his] attendance percentage" and that Birmingham's "current attendance percentage is below the required [Hyundai] attendance percentage of 99%." Doc. 24-14 at 32. The Letter stated that because he fell below the required attendance percentage, he was "being issued a Letter of Conditional Employment/Serious Misconduct" and that he was "required to write a commitment letter explaining what [he would] do to prevent this from reoccurring in the future" and that the "letter is due to [his] management team by the end of [his] next shift Thursday[,] February 2, 2023." *Id.* The Letter was signed by Birmingham, his manager, a team relations representative, and a manager of team relations. *Id.*

Birmingham was scheduled to work the next day on February 2, 2023. Doc. 24-1 at 27. Birmingham testified that he "called in" to report that he was not going to attend work that day "because of [his] health." *Id.* at 101:3–14. However, Birmingham's deposition transcript contains the entry of a tape recording, confirmed in his deposition, which captured his call-in to work on February 2nd in which Birmingham stated "Nicholas Birmingham, Team Member Number 105378, group leader Mildred Lee. I'm not coming in today." *Id.* at 101:17–102:14. There was no reason given or additional information included in the message as to why he did not report to work. Thus, under Hyundai's

7

Excessive Absenteeism Guide Procedure, Birmingham did not provide an approved reason for missing his scheduled shift. Doc. 24-1 at 28; Doc. 24-6 at 20; Doc. 24-14 at 35–36, 38.

The following day, February 3, 2023, Brown produced an Investigation Summary (February Summary) noting Birmingham "accrued additional unpaid time on February 2, 2023," and the management team "requested that [he] be . . . reviewed for termination as a result of excessive absenteeism." Doc. 24-14 at 26. On February 10, 2023, Birmingham submitted a Commitment Letter in which he stated that he would "put forth effort to be at work everyday my shift is scheduled" and that he has been "missing days due to health issues" and "went over time of FMLA so days weren't covered." *Id.* at 33. On February 16, 2023, another ERC meeting was held, and Williams then made the decision to terminate Birmingham from employment for having "an additional unexcused absence on February 2, 2023," after being placed on Serious Misconduct. Doc. 24-15 at 5.

In a letter dated February 21, 2023, Hyundai communicated to Birmingham its termination decision, noting "[t]here are certain things that a Team Member can do that by nature are so serious that the actions place the Team Member outside of [Hyundai's] Corrective Action Policy" and that Hyundai "may terminate the employment of the Team Member." Doc. 24-14 at 38. Because Birmingham was "absent from work on February 2, 2023 after receiving a Serious Misconduct for excessive absences on February 1, 2023," Hyundai concluded it "has no alternative but to terminate [Birmingham's] employment." *Id.*

## IV.   DISCUSSION

Hyundai argues for summary judgment on both the ADA discrimination claim and the FMLA retaliation claim. The Court will first address the ADA claim, then the retaliation claim.

### A.   Birmingham's ADA claim.

Birmingham asserts in his Complaint he had a disability and that Hyundai's decision to terminate him for "absences based on his medical impairments reflected discrimination based on his disability" in violation of the ADA. Doc. 1 ¶ 27–28. Hyundai argues that Birmingham failed to establish a prima facie case because he cannot show that Hyundai was aware of Birmingham's disability before discharging him and because Birmingham cannot establish that he could perform the job's essential functions of maintaining regular attendance. Doc. 25 at 11. Hyundai alternatively argues that even if Birmingham could show a prima facie case, Birmingham cannot show that his disability was a "but/for" cause for his discharge from employment. *Id.* at 11–12.

Courts frequently "use the same *McDonnell Douglas* burden-shifting framework that often applies in Title VII claims" when assessing an ADA claim. *Akridge v. Alfa Ins.*, 93 F.4th 1181, 1191 (11th Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This framework allows a plaintiff to use circumstantial evidence "to establish a prima facie case of disability discrimination." *Id.* The burden is first on the employee plaintiff, and if the plaintiff is successful in establishing a case for discrimination, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision." *Id.* Then, the employee has the burden "to present sufficient

evidence creating a genuine issue of material fact that the employer's reason is a pretext for discrimination." *Id.*

"Title I of the ADA prohibits employers from 'discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment.'" *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (alteration in original) (quoting 42 U.S.C. § 12112(a)). "To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) is a 'qualified individual,' and (3) was discriminated against because of his disability." *Id.*

The Court assumes, for purposes of summary judgment, that Birmingham is disabled and satisfies the first element for a prima facie case because in its motion for summary judgment, Hyundai does not address Birmingham's alleged disability.[1] Thus, at this stage, the Court will not examine whether Birmingham is disabled.

The second element of a prima facie case requires that the plaintiff show he is qualified to perform the essential functions of his job. *Beasley*, 69 F.4th at 754, 758. Birmingham argues that "the record lacks evidence that [his] attendance was deficient to

---

[1] In passing in its reply brief, Hyundai argues Birmingham "offers . . . nothing showing he had a disability[.]" Doc. 34 at 6. Although it is Birmingham's burden as the plaintiff to make out his prima facie case, Hyundai's passing statement in the reply brief is insufficient to raise this issue for the Court's consideration on summary judgment. *See Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1333 (S.D. Ala. 2013) ("District courts . . . ordinarily do not consider arguments raised for the first time on reply." (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court."))); *see also Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding "that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

the point that he could not regularly report to work." Doc. 30 at 11. In support of this, he cites to the fact that the string of absences at issue occurred "more than 10 weeks prior to Birmingham's termination" and that these absences do not support the finding that Birmingham was not capable of adhering to a regular work schedule. *Id.* at 11–12. Hyundai argues that Birmingham "cannot prove at time of discharge that he could perform the job's essential functions" of maintaining regular attendance, so he was unqualified for the job. Doc. 25 at 11. The Court finds that Birmingham has not established he was qualified to perform the essential functions of his job.

"A 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Mazzeo*, 746 F.3d at 1267–68 (quoting 42 U.S.C. § 12111(8)). Courts assess whether an individual is "qualified" by going through a two-step process. *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000)). The court first asks "whether the plaintiff satisfies the position's prerequisites, including 'sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job,'" and then "the [c]ourt analyzes whether the individual can perform the essential functions of the job." *Schultz v. Royal Caribbean Cruises, Ltd.*, 465 F. Supp. 3d 1232, 1271 (S.D. Fla. 2020) (quoting *Reed*, 206 F.3d at 1062). When assessing "whether a particular job duty is an essential function," courts "consider the employer's judgment" in addition to other factors including "the amount of time spent on the job performing the function" and "the consequences of not requiring the individual to perform the function." *Anderson v.*

11

*Embarq/Sprint*, 379 F. App'x, 924, 927–28 (11th Cir. 2010).[2] Courts can look at employee handbooks to guide the review of whether attendance is an essential job function. *See Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1366 (11th Cir. 2000) ("Appellee's policy handbook contained a detailed punctuality policy and Appellee implemented a comprehensive system of warning and reprimands for violations of the policy.").

More broadly, the Eleventh Circuit has repeatedly affirmed the notion that "attendance" can be an essential function of a job when evidence is introduced that supports that finding. *See Earl*, 207 F.3d at 1365–66 (finding that when evidence in the record emphasized the importance of punctuality that "punctuality is an essential function" of the job); *Jackson v. Veterans Admin*, 22 F.3d 277, 279 (11th Cir. 1994) (affirming the district court's holding that the employee "failed to prove he is an otherwise qualified individual because he has failed to satisfy the presence requirement of the job"); *Garrison v. City of Tallahassee*, 664 F. App'x 823, 826 (11th Cir. 2016) (affirming the district court's finding that "[employee] was unable to perform an essential function of her job" and was thus not a "qualified individual" when she failed to maintain "full-time physical attendance").

Hyundai introduced evidence that an essential function of Birmingham's job was to maintain his attendance. *See* Doc. 24-6 at 20–21; Doc. 24-15 at 4; Doc. 24-18 at 35:15–36:7. To start, the Employee Handbook notes that "[r]egular attendance is every Team Member's responsibility, and every Team Member is expected to be on the job and on time every scheduled workday." Doc. 24-6 at 20. Hyundai's Excessive Absenteeism policy

---

[2] Here, and elsewhere in this Opinion, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

emphasized that a Team Member's attendance percentage was so important, that a Team Member who is already on Serious Misconduct for Excessive Absenteeism "can be reviewed for termination if they have one (1) more unexcused absence . . . and their attendance percentage has not improved above 99% during a rolling 12-month period." Doc. 24-14 at 18. Hyundai also established that Birmingham was aware of the importance of his attendance as an essential function of his job. By his own admissions, Birmingham acknowledged that his regular and on time attendance was necessary, Doc. 24-1 at 25:16–22, and also recognized that an essential function of his role was to be present, alert, working at the machines, and that this function was impossible to do from home. Doc. 24-1 at 24:7–10; 24:13–21. In his Commitment Letter, Birmingham acknowledged that he knew "missing work is not tolerated" and stated that he "will do a better job of coming to work." Doc. 24-14 at 33. Birmingham's argument in his brief that his absences do not "remotely suggest that [he] was incapable of adhering to a regular work schedule" is contradicted by the evidence, which includes his own admissions of the importance of attendance.

The evidence introduced reveals that attendance was an essential function of the job, and Hyundai was entitled to require regular attendance as a job qualification. Thus, Birmingham's ongoing absences made him unqualified as a Team Member, and the Court finds that Birmingham cannot meet the second element of a prima facie discrimination case because he has failed to establish that he was "qualified" for the job. For this reason, summary judgment is due to be granted in favor of Hyundai on the disability discrimination claim.

Critically, even if Birmingham could establish that he was qualified for the job, his ADA discrimination claim still cannot move beyond summary judgment because he cannot show that he was discriminated against based on his disability. To "satisfy the *third element* of an ADA discrimination claim" the plaintiff must establish his "employer discriminated against an employee '*because* of [his] disability.'" *Burks v. Wellstar Health Systems*, 2024 U.S. Dist. LEXIS 237274, at *5 (N.D. Ga. Dec. 2, 2024) (quoting *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1197 (11th Cir. 2004)). This element of the prima facie case has long been understood as a "'but-for' causation standard[,]" meaning that "an adverse employment action would not have occurred but for the plaintiff's disability." *Akridge*, 93 F.4th at 1192.

Hyundai argues that Birmingham has not established that Williams, the person making the termination decision, was aware Birmingham was disabled. Doc. 25 at 11. Hyundai argues alternatively that even if Birmingham could establish Williams's knowledge of his disability at the time he was discharged, Birmingham cannot show that the reasons Hyundai offered for Birmingham's termination were false and that but-for his disability, he would not have been discharged. *Id.* at 11–12.

The Eleventh Circuit has affirmed the principle that "[a]n employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability." *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) (quoting *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995)). If the employer "does not know of the disability, the employer is firing the employee '*because of* some other reason.'" *Id.* (quoting *Hedberg*, 47 F.3d at 932). "[A] decision-maker who lacks actual

knowledge of an employee's disability cannot fire the employee 'because of' that disability." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1186 (11th Cir. 2005). "Liability under the ADA requires the employer to have discriminated because of the employee's disability as the employer had *actual* knowledge of the alleged disability at the time it took adverse employment action." *Howard v. STERIS Corp.*, 550 F. App'x 748, 751 (11th Cir. 2013). "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Cordoba*, 419 F.3d at 1183 (quoting *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001)).

Birmingham makes multiple arguments as to why and how Hyundai and Williams were aware of his disability. Birmingham asserts that "details in the record suggest" that Williams knew Birmingham had a medical condition. Doc. 30 at 12. Birmingham also argues that because "Williams conceded that it was 'possible' the commitment letter was presented" at the meeting when Birmingham was fired that Williams knew that he was suffering from a prolonged illness. *Id.* at 13–14. He argues that because his absences arose from denied FMLA leave, the Court must infer that Williams knew of his disability because "an employee who was repeatedly submitting FMLA claims was potentially suffering from some prolonged illness." *Id.* at 12–13.

None of these arguments are availing. To start, the evidence speaks to the contrary. In his affidavit, Williams testified that the decision to terminate Birmingham was based on the February Summary. Doc. 24-15 at 5. In the February Summary, Birmingham was "reviewed for termination as a result of excessive absenteeism" after he "was placed in a Serious Misconduct for Attendance on February 1, 2023, and accrued additional unpaid

time on February 2, 2023." Doc. 24-15 at 26. Williams testified that he "know[s] of no discussion of any respiratory condition, no past nor future FMLA leave uses," nor was Williams "aware [Birmingham] had any kind of respiratory condition." Doc. 24-15 at 5. This evidence shows that Williams had no knowledge of Birmingham's disability when he terminated Birmingham.

Birmingham's argument of inference also fails. Birmingham points to the Serious Misconduct Finding in January 2023, which "describes [his] absences as all arising from denied FMLA leave" (Doc. 30 at 12) and argues that this requires the Court to accept that Williams knew of his FMLA-related illness. Birmingham wants to equate a need for FMLA with confirmation of a disability and is asking the Court to rely on "constructive knowledge" and "assumed intent" rather than providing the Court with evidence showing anyone had actual knowledge of Birmingham's disability or evidence from which a reasonable inference of discrimination could arise. *Cordoba*, 419 F.3d at 1183. Such amorphism the Court cannot accept. An individual need not have a disability as defined by the ADA to apply for or be granted FMLA leave. *See Blake v. City of Montgomery*, 492 F. Supp. 3d 1292, 1302 (M.D. Ala. 2020) ("Plaintiff has the initial burden of establishing the elements of [the] FMLA claim, which include demonstrating a qualifying medical condition that justified [the] absence." (alterations in original)). Therefore, the leap Birmingham requests is not justifiable. For these reasons, the Court finds that Birmingham has failed to establish the third element of the disability discrimination prima facie case. Again, this warrants summary judgment.

Yet, still, moving further through the framework, the Court finds that Hyundai has met its burden of production and articulated the legitimate, non-discriminatory reason of excessive absenteeism for its termination decision. Hyundai has introduced a consistent paper trail documenting Birmingham's termination was directly related to his excessive absenteeism demonstrated by five unapproved days off in a 14-day period, and then missing another day of work without approved leave the day after he was given a serious misconduct violation. Doc. 24-15 at 35. Birmingham's termination letter highlights that the singular cause of his termination was the serious misconduct violation related to absenteeism, and the evidence in the record does not contradict this reason. *Id.* For these reasons, Hyundai has met its burden of demonstrating a legitimate, non-discriminatory reason for Birmingham's termination.

Finally, the Court will assess whether Birmingham has shown that Hyundai's non-discriminatory reason was pretextual. "Pretext means that the reason given by the employer was not the real reason for the adverse employment decision." *Cusick v. Yellowbook, Inc.*, 607 F. App'x 953, 955 (11th Cir. 2015). "An employee can show that the employer's articulated reason was false by pointing to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the proffered explanation." *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). To succeed on a pretext argument, the plaintiff must "show[] both that the reason was false and that discrimination was the real reason." *Id.* This inquiry centers around "the employer's beliefs, not the employee's perceptions of his performance." *Id.*

17

Birmingham has not shown Hyundai's provided reason was pretextual. First, Birmingham's argument that "the company justified firing Birmingham on the grounds that he failed to timely present his commitment letter regarding correction of his attendance issues" is unsupported by the record. Doc. 30 at 15. Birmingham relies on Hyundai's EEOC position statement to argue that Hyundai has given inconsistent reasons for his termination. The position statement provides the following statement regarding his termination:

> The decision to end Mr. Birmingham's employment had nothing to do with any disability. Even assuming for argument purposes Mr. Birmingham had a disability, [Hyundai] had no knowledge of it, including Reggie Williams, the person who decided to end Mr. Birmingham's employment. . . . [Hyundai] terminated Mr. Birmingham's employment because he violated [Hyundai]'s Attendance and Serious Misconduct Policies due to his excessive absenteeism after being given opportunity after opportunity to provide documentation to have absences approved.

Doc. 24-16 at 90 (Pl's Ex. 8). The position statement further describes after being issued a Serious Misconduct, Birmingham was "asked [] that he submit a Commitment letter," but he "failed to submit this letter on time." *Id.* at 91. While the position statement does address his failure to timely submit his Commitment Letter after being issued the Serious Misconduct, this factual recitation does not warrant an inferential pole-vault to conclude that Hyundai terminated him *because* he delayed submission of the letter. Neither can an inference be drawn that his termination must have been related to his disability because his Commitment Letter "contains his assertion that he was 'missing days due to health issues, went over time of FMLA, so days weren't covered.'" Doc. 30 at 13. Instead, the position statement underscores that Hyundai gave Birmingham abundant time to come forward with

any information to excuse the absences it had calculated in support of the Serious Misconduct.

Although the position statement does not mention the February 2nd absence, it is consistent with Hyundai's explanation that Birmingham's excessive absenteeism for which no leave covered was a serious misconduct violation warranting termination. The position statement accurately reflects that Birmingham was given an opportunity to produce anything supporting a finding that the absences at issue were covered by leave or otherwise approved, and it accurately notes that he missed his deadline to do so. The position statement's omission of mentioning the February 2nd absence does not reflect a contradiction or inconsistency in Hyundai's explanation. Birmingham's argument that there is a dearth of evidence demonstrating why the unapproved and uncovered February 2nd absence was the decisive event ignores the record that the absence came on the heels of the serious misconduct finding and the expiration of the opportunity to cure any mistake in the absence calculation up to that point. Doc. 24-18 at 99:5–16.

Birmingham also appears to argue that because Hyundai was not *obligated* to fire him for his absences per the Handbook, Birmingham was terminated for a reason other than his absences, or that he was wrongfully terminated for an excused absence. In support of this position, Birmingham argues that "Williams conceded that he has no knowledge of any internal rule that creates a zero tolerance policy for additional absences after being issued a serious misconduct finding for attendance issues." Doc. 30 at 15, *see also* Doc 24-18 at 21. Birmingham suggests a lower level of discipline could have been selected (Doc. 30 at 16, *see also* Doc. 24-16 at 102:6–14, 106:5–13), and Birmingham also argues, without

pointing to supporting evidence, that his absence on February 2nd was wrongfully "deemed an unexcused absence." Doc. 30 at 16.

None of these arguments support a finding that Hyundai's reason for Birmingham's termination is pretextual—no inconsistency, contradiction, or falsity in the explanation is found on this record. *Cusick*, 607 F. App'x at 955. The February 21, 2023, termination letter explained that Birmingham committed actions in violation of the Serious Misconduct Policy. He was "absent from work on February 2, 2023, after receiving a Serious Misconduct for excessive absences on February 1, 2023." Doc. 24-14 at 38. The Serious Misconduct Policy states that when a person commits an action that places them outside of the Corrective Action Policy, that individual "may be terminated from employment immediately." Doc. 24-6 at 17. The first example on the list of "serious misconduct" is "serious and/or excessive violations of [Hyundai]'s attendance policy." *Id.* While the policy allows for discretion "where it is determined that termination is not appropriate," and to issue a Letter of Conditional Employment to employees in violation, the policy does not *obligate* Hyundai to extend this act of grace, and there is no evidence in this record that the policy was applied differently to others, for example, who had no disability. Thus, Birmingham has not shown that the reason offered for his termination is both false and that disability discrimination is the real reason.

In sum, Birmingham has failed to make a prima facie case showing disability discrimination; Hyundai has satisfactorily provided evidence showing a nondiscriminatory reason for Birmingham's termination; and Birmingham has failed to establish that Hyundai's reason was pretextual. Additionally, no matter the label assigned to his other

arguments—mosaic or otherwise—there is no other evidence in the record that supports an inference of disability discrimination with respect to Hyundai's termination decision. *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 954 (11th Cir. 2023), (Newsom, J. concurring) ("[T]he decisive question [is]: Does the summary-judgment record reveal a genuine dispute of material fact about whether an employer discriminated against its employee 'because of' a protected characteristic?"). Accordingly, no matter at what stage the framework is analyzed, Hyundai is due summary judgment on Birmingham's claim of discrimination under the ADA.

### B.    Birmingham's FMLA retaliation claim.

Birmingham's FMLA retaliation claim arises from Hyundai's "disciplinary action toward [him] [regarding] absences that were protected medical leave" and his "subsequent termination [] based on his use of medical leave and the prospect that he might require additional FMLA leave in the future[.]" Doc. 1 ¶ 34. Birmingham conceded that if the fact-finder credits Hyundai's reason for his termination—that it was triggered by Birmingham's February 2, 2023, absence following the serious misconduct violation notice—then he has no cognizable FMLA retaliation claim. Doc. 30 at 18. But, he argued, if the fact-finder determines he was terminated for not timely submitting his Commitment Letter, then he insists he has a valid FMLA retaliation claim because his delayed letter submission was a protest of an unlawful practice—he feared his Commitment Letter would preclude him from future FMLA, if the need arose. Birmingham argues that his belief about the letter's power was objectively reasonable and should be credited.

The Letter of Conditional Employment recited Birmingham's September, November, and December absences for which he had applied, but was denied, FMLA. The letter specifically notes the specified dates "were all denied and [] affected [his] attendance percentage." Doc. 24-14 at 32. The letter alerts Birmingham that this resulted in his "current attendance percentage [being] below the required [Hyundai] attendance percentage of 99%." He was then required "to write a commitment letter explaining what [he] will do to prevent these issues from reoccurring in the future." Birmingham contends the Letter of Conditional Employment is ambiguous in its reference to "these issues," which reasonably could be read to include not just falling below the 99% threshold, but, instead, to the simple act of applying for and being denied FMLA. Birmingham extrapolates this to argue he could have conceivably believed he was precluded from any absence that decreased his attendance percentage, FMLA protected or not, applying for and being denied FMLA leave, or exceeding allowable FMLA leave. Finally, Birmingham argues generally that Hyundai's policy "makes discretionary termination an option for a worker who exhausts his FMLA leave and has to accrue an unexcused absence in the event of a sudden illness," and this could discourage FMLA use for an employee like Birmingham whose serious misconduct letter would remain active for the ensuing 36 months.

Hyundai's position is that Birmingham cannot create an issue of fact based on a "wishful inference." Hyundai argues that, based upon the substantive burden of proof, Birmingham has failed to create an issue of fact on a material, i.e. "outcome-determinative" issue. That is, because Birmingham was excessively absent under the policy, without leave

to excuse his absences (due, in part, to denied leave), from a job that requires regular attendance as an essential function, his discharge cannot be presumed—or inferred—to be anything other than legitimate and non-retaliatory enforcement of the policy.

To succeed on an FMLA retaliation claim, Birmingham "must demonstrate that [Hyundai] 'intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.'" *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). Retaliation claims under FMLA "can be supported with either direct or circumstantial evidence." *Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023), *cert. denied*, 145 S. Ct. 162 (2024) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001)). Where retaliation is only alleged by circumstantial evidence, the *McDonnell Douglas* burden shifting scheme applies. *Id.* Under this framework, it is plaintiff's task to establish a prima facie case of retaliation. *Id.* A prima facie case requires a showing that plaintiff (1) "engaged in statutorily protected [conduct]"; (2) "suffered an adverse employment action"; and (3) established "some causal relation between the two events." *Id.* (alteration in original). Following this showing, the burden "'shifts to the defendant to proffer a legitimate reason for the adverse action' taken against the plaintiff." *Id.* (quoting *McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023)). If the defendant satisfies this showing, the burden shifts back to the plaintiff to establish that the defendant's reason "is merely pretext for prohibited, retaliatory conduct." *Id.* (quoting *McAlpin*, 61 F.4th at 927).

"[T]aking FMLA leave" and then "suffer[ing] an adverse employment action [by being] terminated" satisfies the first two elements of the framework for making a prima facie case. *Jones*, 854 F.3d at 1271. The Court assumes, arguendo, that Birmingham could establish that he engaged in statutorily protected FMLA activity. Without dispute, his termination was an adverse action. *See id.* at 1270. Hyundai argues only that the causal relation component of Birmingham's FMLA retaliation claim is lacking, the but-for proof component.

The Eleventh Circuit has provided the application of the but-for burden for FMLA retaliation claims.

> As relevant, but-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). Thus, the but-for test "directs us to change one thing at a time and see if the outcome changes." *Id.* If it does, the isolated factor is a but-for cause. And if it does not, the isolated factor is not a but-for cause, and all of the other factors, taken together, are sufficient. *See id.*; *see also Burrage*, 571 U.S. at 211 (describing a but-for cause as a "straw that broke the camel's back"). To be clear, single events often "have multiple but-for causes," so the but-for standard can be quite "sweeping," depending on the circumstances. *Bostock*, 590 U.S. at 656. For purposes of *McDonnell Douglas*, this but-for standard demarcates the causation component of the employee's initial, prima facie showing requirement and also shapes the subsequent burdens of both the employer (i.e., to proffer a legitimate reason sufficient to justify the termination) and the employee (i.e., to show that the reason proffered by the employer is pretextual).

*Lapham*, 88 F.4th at 894.

Here, the Court finds Birmingham has failed to produce sufficient evidence showing that Hyundai's proffered reason for his termination was merely pretext for retaliation and that, but for the retaliation, Hyundai would not have fired him. To the extent Birmingham

24

argues that but for his delayed submission of the Commitment Letter, he would not have been terminated, the evidence fails to support that leap. The Letter of Conditional Employment (Doc. 24-14 at 32), Birmingham's Commitment Letter (Doc. 24-14 at 33), the Serious Misconduct Policy (Doc. 24-6 at 17), and Termination Letter (Doc. 24-14 at 38) together emphasize and acknowledge that if Birmingham was "absent" another day without properly documented leave, he was eligible to be terminated. Birmingham took unaccounted for leave the day after receiving the Letter of Conditional Employment. The record establishes Hyundai then terminated his employment based on excessive absenteeism under the policy. No other inference is reasonable on this record. The delay in his production of the Commitment Letter (or his reasons for the delay concerning fear of future, hypothetical adverse action) cannot support an inference on this record that but-for his delay the decision to terminate would not have occurred. Hyundai's explanation for the termination is consistent on this record, and Birmingham's argument as to his concern about the future impact of the Commitment Letter does not undermine the explanation.

Birmingham relies on *Graham v. State Farm Mutual Insurance Co*., 193 F.3d 1274 (11th Cir. 1999), to argue that he had a reasonable concern about the unknown consequences of the Commitment Letter on potential future FMLA leave. There, the plaintiff argued that a memorandum documenting her absences "led her to believe that she was going to be terminated if she missed any more days of work," even if further absences were FMLA-qualifying. 193 F.3d at 1284. However, the Eleventh Circuit, in discussing plaintiff's constructive discharge claim, determined the plaintiff's perception that the memorandum was a threat of adverse action on future FMLA leave was unreasonable

because the memo clearly addressed non-FMLA covered absences. *Id.* The Eleventh Circuit further determined that plaintiff's subjective belief was not determinative. *Id.*

Birmingham also cites *Munoz v. Selig Enterprises*, 981 F.3d 1265 (11th Cir. 2020) for his argument. *Munoz* concerned the district court's summary judgment for the employer where the employee had absences due to endometriosis and was terminated after she refused to sign a performance memo. In a meeting discussing her improvement plan, plaintiff brought up her need to take future FMLA leave. *Id*. at 1281. Her employer did not distinguish between FMLA-protected absences and unprotected absences despite her raising a concern in the meeting. Plaintiff alleged she told her supervisors "she believed signing the Memo would subject her to discipline for further FMLA-qualifying leave." *Id*. In response, the supervisors did not assuage her understanding. Instead, one supervisor "indicated perhaps she should not receive future leave because she was not legitimately ill." *Id*. at 1282. The Eleventh Circuit concluded "[plaintiff] reasonably believed that signing the Memo would waive her FMLA rights." *Id*. But under the employer's version of the facts, it was possible they counseled plaintiff about the implications of signing the Memo, that she did not bring up her health concerns until after she was fired, and her supervisor did not "express[] doubt about her illness until after she had been terminated." *Id.* The Eleventh Circuit explained that "[u]nder [the employer's] view of the facts, [plaintiff's] understanding that the Performance Memo terminated her right to future FMLA leave would be objectively unreasonable." *Id.* Thus, the Eleventh Circuit concluded this presented a quintessential question that a factfinder, not the Court, should resolve, and reversed the district court's summary judgment finding.

26

Neither case supports a finding here that Birmingham has created a material factual dispute. First, the record does not demonstrate that he was terminated because he delayed submitting the Commitment Letter. Second, the record does not establish that he raised any concern about his future use of FMLA leave based on the Commitment Letter. Finally, the record does not support a finding or inference that Birmingham's perception of the future impact of the Commitment Letter was reasonable.

Thus, the Court finds Birmingham failed to show that Hyundai's proffered reason for his termination was merely a pretext for retaliation and that but-for his exercise or attempt to exercise his FMLA rights, he would not have been terminated and summary judgment is due to be granted to Hyundai on Birmingham's retaliation claim.

## V.    CONCLUSION

For the reasons stated above, it is ORDERED that Hyundai's Motion for Summary Judgment (Doc. 23) is GRANTED. A separate judgment will issue.

DONE this 6th day of March, 2025.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE